**UNITED STATES of America, Upon the Relation and For the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff-Appellant,**

v.

**EASEMENTS AND RIGHTS–OF–WAY, etc., Winchester Development Corporation, et al., Dorothy Kirby Wills, Vadis N. Jeter, et al., Defendants-Appellees.**

**UNITED STATES of America, Upon the Relation and For the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff-Appellant,**

v.

**An EASEMENT AND RIGHT–OF–WAY 200 FEET WIDE AND 1,022 FEET LONG OVER CERTAIN LAND IN SHELBY COUNTY, TENNESSEE, Walter D. May, Jr., et ux., Defendants-Appellees.**

Nos. 18627–18630.

United States Court of Appeals Sixth Circuit.

April 9, 1969.

Thomas A. Pedersen, Asst. Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn., for appellant; Robert H. Marquis, Gen. Counsel, Tennessee Valley Authority, Beverly S. Burbage, William W. Hurst, Knoxville, Tenn., on brief.

Leo L. Cole and James N. Clay, III, Memphis, Tenn., for appellees in Nos. 18627–18629; Alfred B. Pittman, Memphis, Tenn., on brief.

Charles O. McPherson, Memphis, Tenn., for appellees in No. 18630; John S. Porter, Memphis, Tenn., on brief; Burch, Porter & Johnson, Memphis, Tenn., of counsel.

Before WEICK, Chief Judge, and PECK and McCREE, Circuit Judges.

WEICK, Chief Judge.

Tennessee Valley Authority has appealed from awards of compensation made to landowners by a three-Judge District Court panel in four condemnation actions. The awards were for easements taken by TVA for the construction, operation and maintenance of a 500,000-volt electric power transmission line with towers and attachments[1]. The easements taken were 200 feet in width and extended across four parcels of land owned by the landowners and situated near Germantown, a suburb of Memphis, Tennessee.

Across the Winchester tract the easement is 3,059 feet long and contains fourteen acres of land. Three steel towers are located thereon. The easement extends 1,238.8 feet across the Wills property and contains 5.7 acres, on which are located two steel towers. The main portion of the easement running across the Jeter tract is 3,937 feet in length, containing 18.1 acres and four steel towers. A small portion of the easement, containing 0.8 acres, is in the bend of a creek. The easement runs 1,022 feet across the May property and contains 4.7 acres, with one tower located thereon.

The District Court appointed a commission of three members to determine the value of the easements taken. The Commission heard testimony and made the following awards:

Winchester Tract:
| | |
|---|---|
| Damage to land within the easement | $17,500 |
| Incidental damage to residue | 10,500 |
| Total award | 28,000 |

Wills Tract:
| | |
|---|---|
| Damage to land within the easement | 23,085 |
| Incidental damage to residue | 20,000 |
| Total award | 43,085 |

Jeter Tract:
| | |
|---|---|
| Damage to land within the easement | 57,834 |
| Incidental damage to residue | 41,000 |
| Total award | 98,834 |

May Tract:
| | |
|---|---|
| Damage to land within the easement | 19,035 |
| Incidental damage to residue | 18,000 |
| Total award | 37,035 |

---

[1]. Cases numbers 18,627, –628 and –629 were consolidated in the District Court and were heard together with case number 18,630 on appeal. Since the issues are similar in all four cases, we consider all four in this opinion.

The three-Judge District Court panel then heard the cases on exceptions to the report of the Commission and made the following awards, which were not substantially different from the awards of the Commission:

Winchester Tract (Case No. 18,627):

| | |
|---|---:|
| Damage to land within the easement | $16,800 |
| Incidental damage to a strip of 4.4 acres on the east side of the tract, and to a strip 200 feet wide running the entire length of the easement, containing 14 acres | 11,040 |
| Total award | 27,840 |

Wills Tract (Case No. 18,628):

| | |
|---|---:|
| Damage to 5.7 acres within the easement | $23,085 |
| Incidental damage to a 200 foot strip on each side of the easement, containing 11.4 acres | 20,520 |
| Total award | 43,605 |

Jeter Tract (Case No. 18,629):

| | |
|---|---:|
| Damage to 18.1 acres within the easement | $52,490 |
| Damage to land within 0.8 acres | 2,000 |
| Incidental damage to an area of 16 acres on each side of easement | 41,600 |
| Total award | 96,090 |

May Tract (Case No. 18,630):

| | |
|---|---:|
| Damage to 4.7 acres within the easement | $19,035 |
| Incidental damage to 200 foot strip on each side of easement containing 9.4 acres | 16,920 |
| Total award | 35,955 |

In addition, the District Court ordered TVA to pay interest to the landowners upon supplemental deposits from the dates when said deposits were paid into the registry of the Court until the dates when the landowners were informed of such deposits.

It is undisputed that the highest and best use of all four tracts is for residential subdivision development. TVA does not dispute the per acre value determinations made by the three-Judge District Court[2], nor does it dispute the findings of the District Court as to the amount of depreciation in the value of the land located within the confines of the easements. The thrust of TVA's contentions is that the awards should be limited to damages found by the District Court to the land within the exact confines of the easements, other than the damages due to the isolation of small plots of land not large enough for building sites, which resulted from the taking of the easements[3]. This is the sole controversy between the parties.

TVA contends that, other than the amounts it would allow for the isolated

2. These values are: 1) *Winchester* case, $1,500 per acre; 2) *Wills* case, $4,500 per acre; 3) *Jeter* case, $3,250 per acre; 4) *May* case, $4,500 per acre.

3. Consistent with this approach, TVA would make the following awards: 1) *Winchester* case, $16,800 for the land within the easement plus $2,640 for the isolated strip of property; 2) *Wills* case, $23,085 for the land within the easement; 3) *Jeter* case, $54,490 for the land within the easement; 4) *May* case, $19,035 for the land within the easement, plus $2,025 for an isolated strip of land.

parcels of land in the *Winchester* and *May* cases, there is no damage whatsoever to land outside the exact boundaries of the easement, and that the District Court erred in allowing any incidental damage therefor to the landowners.

TVA also complains about the use by two of the expert witnesses of the landowners, of a formula in determining the incidental damage to the land outside of the easements, which formula was sanctioned by both the Commission and the District Court.

The Commission commented on the use of the formula as follows:

"The Commission concludes that the preponderance of the evidence shows substantial damage in all of the subject cases to the land outside the confines of the easement. Fixing the exact amount of such damage is understandably a difficult task because this cannot be done with mathematical certainty. The expert witnesses for the owners assessed incidental damages to a 200-foot strip on both sides of the easement in the Wills and Jeter cases and to the west of the easement in the Winchester Development Corporation case. One expert testified that this 200-foot strip was decreased in value by 50%; the other expert witness felt that the diminution in value was 40%. This method of arriving at incidental damages is frequently employed by appraisers in condemnation cases, although it is certainly not the only way to approach the problem. Establishing a 200-foot damage strip in these cases is necessarily arbitrary to some extent. For example, some damage could extend to land further away from the easement. Likewise all of the land within the 200-foot strip might not suffer the same damage. The 40% and 50% diminution figures are simply an average. On the other hand, an average figure was necessarily used by all witnesses when they placed a residual value upon the land within the easement because of the fact that certain portions of this property are more valuable than other portions thereof. For example, the land inside the towers is damaged more than the land outside the towers and the land immediately adjacent to the towers—though not under them— is more affected than the land further away within the easement. Indeed the small area on which the tower footings are set has no residual value to the owner. Both Mr. King and Mr. Kenworthy who are well qualified and have testified as experts for many federal, state and local agencies, as well as others, recognized that their 200-foot damage line might be questioned but in their expert opinion, based upon extensive study and experience, it was the fairest and most accurate place to draw the line in fixing incidental damages."

The District Court panel, in discussing the subject, said:

"How to determine the effect of incidental damages has presented a difficult problem for the expert witnesses, the Commissioners, and the Court. Except as heretofore indicated, all of the Tennessee Valley Authority witnesses were of the opinion that no incidental damages were caused; therefore, there is nothing in the record from those witnesses which can serve as a basis for establishing a method of determining incidental damages. The witnesses for the property owners admittedly found the problem of determining incidental damages a difficult one, involving formulae subject to dispute. The most feasible method contained in the record in this case is to determine the incidental damages to the entire tract by applying a portion of the acreage value of that tract to a strip 200 feet wide on both sides of the easement. This method is arbitrary in some respects and our holding does not suggest such a 200 foot strip is applicable in all cases because the facts in other cases will be different."

We recently approved the use of a formula in United States ex rel. Tennessee Valley Authority v. An Easement and Right of Way in Madison County,

Tenn., 405 F.2d 305 (6th Cir. 1968): We are not convinced that the use of a formula in the present case in determining the diminution in value to the entire residue of the land was improper or that it operated to prejudice TVA. The use of a formula must be based on the facts of the particular case. The formula used in the case before us differed substantially from the one used in the Madison County case cited above.

The evidence was in conflict as to whether the construction, operation and maintenance of the high tension electric transmission lines depreciated the value of land outside of the 200 foot easement. All of the landowners' experts testified that it did substantially. The experts for TVA testified that it had no effect whatsoever. While the testimony of the TVA experts is entitled to weight, we think the greater weight of the evidence is on the side of the landowners.

TVA contends that we are controlled by evidence which it offered to the effect that in other developed subdivisions in the Memphis area, the retail price of lots was not affected by the presence of high tension transmission lines and towers. We do not regard the testimony of the TVA experts as conclusive.

The Commission reviewed this testimony and made the following findings:

"Here we are not concerned with lot sales or lot prices in a developed subdivision but rather with the question of damage to land outside the easement area where the property in question is at least several years away from a residential use. Developers having an anywhere equal choice will by-pass the land burdened by a transmission easement simply because they do not wish to become involved with the various problems which such an easement could cause. For example, the fact that the flexibility of the design of the subdivision is severely limited where an easement is present could prove a serious financial detriment. Streets within such a subdivision must parallel the easement in order to minimize the loss of lots. An undesirable street pattern could result. An example of this is the suggested subdivision layout prepared by Mr. H. C. Frincke of the TVA and introduced in evidence in the Jeter case. No matter how you look at it, the 200-foot wide easement cutting through the subject properties greatly reduces the possibility of interesting and desirable subdivision plans. This is true regardless of the fact that the easement does not cross the properties on an angle. The subdivision layouts drawn by Mr. Frincke of the TVA in the Wills and Jeter cases do not prove to the contrary.

"Another possible disadvantage to a developer is the fact that it might be necessary to cross the easement with streets and/or utilities which would add to his expense. This would certainly apply to the Jeter case and probably to the Wills case. Above we have set forth only some of the objections which a developer might have to property encumbered by an easement.

"A developer who has a choice does not wish to become involved with these problems which naturally reflect themselves in a depressed value of the tracts as a whole. Significantly in 1964 there was considerable land suitable for potential residential development in the Germantown area which was not encumbered by a TVA easement."

The District Court panel found:

"Two particular types of testimony created considerable controversy at the hearing before the Commissioners. One of these concerned the reliance by expert witnesses on the sales price, saleability and location of subdivided lots in other areas wherein a comparison was made between subdivisions subject to transmission line easements and those not subject thereto. While it is true a developer is primarily interested in the number of lots that he can realize from the purchase and development of a large tract of land, it does not follow that the sale prices,

saleability and other features of lots in other subdivisions may be given controlling probative value in determining the per acre value of these large undeveloped tracts. Many factors other than the existence of a transmission line easement can and do affect the value and saleability of the lots for future residential development. Among these other features are the acumen of a particular developer, the demand in the immediate area for a subdivision development, the topography of the land in question, the proximity of utilities, the cost of providing streets, the cost of borrowing money during the development and numerous other problems with which a developer is confronted. For these reasons, less weight may be given to the proof concerning specific lots in other areas for the purpose of determining how the easement will affect an ultimate development on these tracts. In this regard a mere sketch with lots shown thereon is not determinative of the price that a developer would pay for these tracts of raw real estate."

While these findings of the Commission and of the District Court panels are not binding on us in our consideration of the case *de novo*, we do regard them as persuasive. They conform to our views on the subject.

The allowance of incidental damages for land outside the confines of the easement was approved by us in United States ex rel. Tennessee Valley Authority v. An Easement and Right of Way in Madison County, Tenn., *supra*. Such damages were also awarded in United States ex rel. Tennessee Valley Authority v. An Easement and Right of Way Over Land in Logan County, Ky., 336 F.2d 76 (6th Cir. 1964), and Hicks v. United States, 266 F.2d 515 (6th Cir. 1959), both of which also took into account esthetic considerations.

Awards are hereby made to the landowners in the same amounts as were made by the District Court panel, and judgment is entered therefor.