405 F.2d 305
 UNITED STATES of America, upon the relation and fro the Use
of the TENNESSEE VALLEY AUTHORITY,
Plaintiff-Appellee and Cross-Appellant,
v.
An EASEMENT AND RIGHT OF WAY 200 Feet Wide and 3,435 Feet
Long OVER A TRACT OF LAND IN MADISON, COUNTY,
TENNESSEE, Minnie L. Moore, et al.,
Defendants-Appellants and
Cross-Appellees.
 Nos. 18252, 18253.
 United States Court of Appeals Sixth Circuit.
 Dec. 26, 1968.
 
 George L. Morrison, and Carmack Murchison, Jackson, Tenn., for appellant and cross-appellee; Murchison & Murchison, Jackson, Tenn., of counsel.
 Thomas A. Pedersen, Asst. Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn. (Robert H. Marquis, Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn., Paul T. Dunn, Knoxville, Tenn., on the brief), for appellee and cross-appellant.
 Before PECK, McCREE, and COMBS, Circuit Judges.
 COMBS, Circuit Judge.
 
 
 1
 The United States, pursuant to the Tennessee Valley Authority Act, 16 U.S.C. 831 et seq, instituted proceedings in District Court to condemn a permanent easement and right of way across appellants' property for electric power lines and supporting towers. The three commissioners appointed in accordance with Section 831x awarded $35,000 as compensation; both TVA and the property owners excepted. The commissioners' award was reduced to $22,594 by the District Court. The property owners contend the award is too law; TVA on cross-appeal contends the award is too high. We consider the case de novo-- 16 U.S.C. 831x.
 
 
 2
 The easement was taken in December, 1962, and is part of a 230-acre tract which lies on the east and west sides of US Highway 45 approximately five miles north of the center of Jackson, Tennessee. The easement, 200 feet wide, 3,435 feet long, and containing 15.8 acres, extends diagonally over the northern portion of appellants' land at an angle which causes the portion of land north of the easement and east of the highway to be isolated as a small triangular tract. In addition to the electric power lines, four supporting towers are located on the easement.
 
 
 3
 The overall tract, lying adjacent to Highland Memorial Carden Cemetery on the north and a high school on the south, is presently farmland but its best potential use is residential. Substantial development has occurred between the city and appellants' property with the more concentrated areas being nearer the city. The Landowners' witnesses valued the land before taking at between $2,000-$3,000 an acre; estimates of TVA witnesses ranged from $950-$1,200 an acre. Based upon this testimony, the landowners seek to recover $80,000 while TVA contends $12,325 would be just compensation.
 
 
 4
 Basically, we must resolve three issues: first, the before taking value of the land; second, the after taking value within the easement; and, third, the incidental damages to the land adjacent to the easement. The landowners, in effect, ask us to credit the testimony of their witnesses and ignore that of TVA witnesses. TVA, on the other hand, insists that its witnesses best meet the test of competency and credibility. In addition, TVA challenges the admission of the landowners' evidence in the following respects: (1) the competency of some witnesses to express an opinion as to value; (2) the admission of certain sales as comparable; and, specifically, (3) the admissibility of a sale to a school board having the power to condemn.
 
 
 5
 In determining the land's fair market value before the taking, brief comment is relevant to the evidentiary issues enumerated above. Regarding the competency of witnesses in cases of this nature, opinion evidence usually may be admitted from those who are not strictly experts, the test being whether it can be shown the witness knows the land and its surroundings and has an opinion as to value based upon more than mere conjecture. Love v. United States, 141 F.2d 981 (8th Cir.1944); Welch v. Tennessee Valley Authority,108 F.2d 95 (6th Cir.1939); 27 Am.Jur., Eminent Domain 425. Without belaboring the point, we are of the opinion that the landowners' witnesses met this minimum standard. Such testimony merited consideration, but not necessarily acceptance.
 
 
 6
 The proper test in determining the admissibility of other sales as comparable is the similarity in character and locality of the land sold. Knollman v. United States, 214 F.2d 106 (6th Cir.1966). The land involved here is neither exclusively limited to farm use nor presently in demand for residential use. So, its value fluctuates somewhere between the two. Under such circumstances, we are reluctant to exclude evidence of other sales in the locality where it is established that the land sold had a potential use comparable to that of the land in question. The extent of comparability goes to the weight rather than to the admissibility of the evidence. United States v. 124.84 Acres of Land, etc., 387 F.2d 912 (7th Cir.1968).
 
 
 7
 The record shows the sale to the school board was voluntary and not in connection with or in anticipation of condemnation proceedings; as such, it falls within a recognized exception to the rule excluding sales in which the purchaser is an instrumentality having the power of eminent domain. 27 Am Jur. Eminent Domain 430. Although the sale occurred twenty-three months after the date of taking in this case, no absolute rule precludes consideration of subsequent sales. United States v. 63.04 Acres of Land, etc., 245 F.2d 140 (2nd Cir.1957). Actually, in a case of this nature, not decided by a jury but by those experienced in determining land values, we prefer to adopt a liberal attitude in regard to admission of evidence and then consider it for what it is worth. United States v. Sowards, 370 F.2d 87 (10th Cir.1966); United States v. 63.04 Acres of Land, etc., supra.
 
 
 8
 Even though evidence of the sale to the school board is worthy of consideration, several factors existed there which clearly enhanced the sale price, thus indicating that appellants' overall tract was worth substantially less than the $2,100 per acre paid by the school board. For example, the sale occurred several months after the date of taking of this property; it involved that portion of appellants' land located nearest the city and of superior topography; and the tract consisted of twenty acres favorably located adjacent to the school.
 
 
 9
 Generally, evidence of sales of comparable property is persuasive evidence of market value, either as direct proof or in support of a witness's opinion. United States v. Sowards, supra; United States v. Johnson, 285 F.2d 35 (9th Cir.1960); Welch v. Tennessee Valley Authority, supra. But, where witnesses do not base their opinions on sales of the most similar property, their opinions have slight probative value. Welch, supra.
 
 
 10
 Many of the sales testified to by witnesses of the landowners were of small lots or tracts located in areas of advanced development contiguous to the city. The value of small, advantageously located lots is not convincing evidence that every acre of another larger tract has the same proportionate value. Here, the highest value introduced of a large acreage tract was $752 an acre. That tract, although not fronting on the highway, adjoins the subject property and has been used for subdivision purposes. Its sale is probably the most comparable and reliable guide available. Time, expense, planning, adaptability, and supply and demand are only a few factors accounting for the substantial differential in value between farm land susceptible to future development and land already sold as a residential or commercial development. Giving consideration to all the factors herein enumerated, we conclude, as did the District Judge, that $1,200 an acre is a fair valuation for the land taken.
 
 
 11
 The concensus of TVA witnesses of the value of the land within the easement after the taking was $500 an acre; the corresponding figure of the landowners' witnesses was approximately $300 an acre. Selection of $400 by the District Judge as the market value of the land within the easement after the taking seems to be reasonable.
 
 
 12
 Turning to the issue of incidental damages, the District Judge awarded 50 per cent of the value per acre for the area within the small, triangular tract isolated by the easement and for a 100-foot area on each side of the easement. The objections to the amount of incidental damages seem to be with regard to the 100-foot areas, and not to the finding of damage to the isolated tract or to the 50 per cent allowance. The landowners claim incidental damages to all land north of and 200 feet south of the easement.
 
 
 13
 TVA has presented us with the results of studies conducted in urban areas such as Memphis, Nashville, and Knoxville to establish that power lines do not reduce adjacent land values. Although these studies are creditable, we aer not prepared to hold that the presence of electric power lines and towers has no effect on the value of the land adjacent to these structures. To so hold would be to disregard such variants as supply and demand and the peculiar buyer attitudes which frequently influence the salability of land. We have consistently allowed incidental damages to be considered in this type case. United States ex rel. Tennessee Valley Authority v. An Easement, etc., in Logan County, Ky., 336 F.2d 76 (6th Cir.1964); Hicks v. United States, for Use of Tennessee Valley Authority, 266 F.2d 515 (6th Cir.1959).
 
 
 14
 TVA forcefully challenges the following statement in Hichs at page 521:
 
 
 15
 'The apprehension of injuries to person or property by the presence of power lines on the property is founded on practical experience and may be taken into consideration in so far as the lines and towers affect the market value of the land.'
 
 
 16
 Since the Hicks case was decided, nearly ten years ago, TVA has conducted numerous safety studies and has concluded from them that apprehension of injuries is not founded on practical experience and should not be considered in awarding incidental damages. The TVA studies conducted on this issue are also creditable. However, in final analysis, we are concerned only with market value. Although these studies may show objectively the complete safety of these structures, we are not convinced that certain segments of the buying public may not remain apprehensive of these high voltage lines, and therefore might be unwilling to pay as much for the property as they otherwise would. On this record, allowance of incidental damages of 50 per cent of market value to the triangular tract and for a width of 100 feet on each side of the outer boundary of the remainder of the easements appears to us reasonable and proper.
 
 
 17
 After considering and weighing the evidence, examining the witnesses' qualifications, and viewing the results of cross-examination, we are of the opinion the amount awarded by the District Judge represents a reasonable estimate of the landowners' damages.
 
 
 18
 The judgment is modified to $22,394 to correct an apparent error in calculation and, as modified, is affirmed.