568 P.2d 236

**Robert PROPER, Plaintiff-Appellant,**

**v.**

**Frank W. MOWRY, Defendant-Appellee.**

**No. 2740.**

Court of Appeals of New Mexico.

July 26, 1977.

Melvin L. Robins, Albuquerque, for plaintiff-appellant.

William S. Dixon, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendant-appellee.

## OPINION

SUTIN, Judge.

This case involves a claim of slander made by one physician against another on December 3, 1973, at a staff meeting of doctors held at the Lovelace Clinic in Albuquerque, New Mexico. The jury returned a verdict for defendant and plaintiff appeals from the judgment entered in favor of defendant. We affirm.

Plaintiff's claims of error will be discussed seriatim.

A. *The trial court did not err in its ruling on plaintiff's "Motion in Limine" and a denial of mistrial.*

On September 15, 1976, two days before trial, plaintiff filed what is called a "Motion in Limine". This motion sought an order of court that defendant's attorney make no reference in his opening statement to the following evidence:

[T]hat subsequent to his dismissal by the Lovelace Clinic, [December 31, 1973] Plaintiff has had his privileges suspended at local hospitals for failure to have his charts up to date and that there has been

filed against him with the grievance committee of the County Medical Society grievances alleging excessive fee charges by the Plaintiff.

On September 17, 1976, the morning of trial, the motion was heard in the court's chambers. The court requested defendant's attorney to place of record what he intended to touch on in his opening statement. Defendant's attorney said:

What my defense is *with respect to damages,* I would like to state the following: 1. That the reason for Doctor Proper enjoying a lack of esteem *in the year 1976* is not because of anything Doctor Mowry said, but rather because of his reputation for charging excessive fees; 2. The reputation for over-utilizing hospital facilities; 3. The reputation for sloppy record keeping and suspension from the hospitals for failure to keep records up, and his general attitude to the medical community in Albuquerque.

With respect to excessive fees, I expect and want to say in my opening statement that the reason Doctor Proper may not be receiving referrals is referring physicians do not want to refer patients to a physician if he charges more than what the insurance company will reimburse, and since Doctor Proper's fees are in excess of that typically paid in the community, they are not reimbursable, and that is why Doctor Proper does not receive referrals, not because of anything Doctor Mowry said.

\* \* \* \* \* \*

May I make a record on the adultery matter? My theory would be: 1. The relation to reputation. He admitted he committed adultery. A public complaint was filed in this court alleging adultery. He admitted to it in the course of the divorce proceedings. It's relevant to reputation, and I am entitled to that, and also in terms of bringing out a bad act under these rules. If Your Honor would rule on that now I won't have to approach the bench. [Emphasis added.]

The court ordered defendant's attorney to refrain from mentioning, (1) the subject of adultery because it was irrelevant to plaintiff's reputation, (2) the grievance committee event, and (3) excessive fees charged.

Over objection, the court allowed defendant's attorney to state generally, (1) that plaintiff over-utilized diagnostic methods, (2) that record keeping was not up to community standards in Albuquerque, and (3) that plaintiff charged fees that would not be reimbursed by insurance companies.

In his opening statement, defendant's attorney with reference to the question of damages, said:

> We will show that Doctor Proper, among certain surgeons in town, enjoys a reputation of charging more fees than the insurance company will reimburse for the patient, and as a result, certain surgeons are reluctant to send patients to him, because the patients can't get reimbursement from the insurance company. So to the extent there has been a loss of reputation, or he does not enjoy a good reputation as he might, we contend the evidence will show this is a result of his own actions and nothing that Doctor Mowry did. We will also show that Doctor Proper has a reputation in some circles for over-utilization of procedures; that is doing too many tests, and that if there is a lack of good reputation being enjoyed by him, that may be another reason why he does not have as good a reputation as he would like.

Plaintiff moved for a mistrial. The motion was denied.

### (1) *Briefs filed did not assist on issue of "Motion in Limine"*.

Before we discuss the issue involved, we desire to continue to criticize attorneys for failure to properly assist this Court in a determination of the issue.

This pretrial motion is a matter of first impression in New Mexico, yet opposing attorneys must not have believed that this procedural matter deserved any mention, attention or comment. In briefs filed, no mention was made of the scope and purpose of the motion, nor whether it is an acceptable procedural process in New Mexico, nor whether it is covered by our Rules of Civil Procedure, nor what law governs the decision of the trial court.

Continued criticism of briefs filed on appeal reflects that appellate courts, not the attorneys involved, must search for a just and fair solution of the case. Attorneys who are inexperienced, or who do not have time in which to perform their duties properly, should seek assistance. Otherwise, their clients will suffer the pain of outrageous misfortune.

### (2) *Pretrial procedure covers "Motion in Limine"*.

On August 27, 1976, a pretrial conference was held. During this conference, defendant's attorney made comments that indicated he would make statements in his opening presentation to the jury that plaintiff believed were prejudicial.

Rule 16(6) of New Mexico Rules of Civil Procedure [§ 21–1–1(16)(6), N.M.S.A.1953 (Repl.Vol. 4)] provides that the court can consider "[s]uch other matters as may aid in the disposition of the action." This rule is derived from Rule 16 of the Federal Rules of Civil Procedure and is identical therewith. This all-encompassing provision gives the trial court independent authority to determine questions raised as to the admissibility of evidence at trial. *Aley v. Great Atlantic & Pacific Tea Co.*, 211 F.Supp. 500 (W.D.Mo.1962); *Carlock v. Southeastern Greyhound Lines, Inc.*, 8 Fed.Rules Serv. 16.261, Case 1 (E.D.Tenn.1944); *Bradbeer v. Scott*, 193 Cal.App.2d 575, 14 Cal.Rptr. 458 (1961); Herr, The Evidence Ruling at Pretrial in the Federal Courts, 54 Calif.L.Rev. 1016 (1966).

The written motion, the oral arguments, and the oral order of the trial court made on the morning of trial, places an undue burden on the court because he must shoot from the hip to reach a result. Attorneys should avoid this event whenever possible. If presented in advance of trial with briefs

filed and with time to hear argument, and study the issue involved, the court will be inclined to decide the matter presented with an appropriate order.

In the instant case, if the matter had been raised at the pretrial conference, it might have obviated plaintiff's "Motion in Limine" long before trial.

### (3) The "Motion in Limine" procedure is acceptable in New Mexico.

Ofttimes a pretrial conference is held long before trial. Thereafter, by discovery procedures, conferences held, and by other ways, prejudicial matters may arise that require "in limine" procedure. Inasmuch as the "Motion in Limine" will be filed hereafter in many cases, we deem it essential to tour this subject matter and establish guidelines that may avoid reversible error.

Indiana adopted this procedural device in 1973. *Burrus v. Silhavy*, 155 Ind.App. 558, 293 N.E.2d 794 (1973), 63 A.L.R.3d 304 (1975). We quote from *Burrus* to set up our approach to a solution of the problem presented.

A "motion in limine" is a term used to describe a written motion which is usually made before or after the beginning of a jury trial for a protective order against *prejudicial questions and statements*. Its purpose has been succinctly expressed in *Bridges v. City of Richardson* (1962), 163 Tex. 292, 354 S.W.2d 366, 367:

"The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of *prejudicial* questions and the making of *prejudicial* statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or on the rights of the parties to the suit. It is the *prejudicial* effect of the questions asked or statements made in connection with the offer of the evidence, *not the prejudicial effect of the evidence itself,* which the motion in limine is intended to reach . . . ." Its effect has been to shorten the trial, simplify the issues and reduce the possibilities of a mistrial. [Emphasis added] [293 N.E.2d at 796–97].

*Burrus* stated the reasons for adoption of this pretrial procedure as follows:

A trial court has the inherent power to admit or exclude evidence. A "motion in limine" is a necessary adjunct to the inherent power of a trial court to exclude inadmissible and prejudicial evidence before and during trial. The granting of such motions may necessitate the issuance of protective orders which will assure a fair and impartial administration of justice. [293 N.E.2d at 795].

·We have emphasized the word "prejudicial" because "[T]he purpose of a 'motion in limine' is to exclude prejudicial matter and not to exclude irrelevant evidence as was done in the present case." *Baldwin v. Inter City Contractors Service, Inc.,* 156 Ind.App. 497, 297 N.E.2d 831, 832 (1973). "Such a motion is [also] a useful tool in preventing immaterial matter from encumbering the record. It gives the court an opportunity to rule in advance on the admissibility of evidence." *Wagner v. Larson,* 257 Iowa 1202, 136 N.W.2d 312, 326 (1965).

It is also important that a proper motion be filed and a proper order be entered so that a mistrial or reversible error can be avoided.

For a proper form of motion to use, see Hyde, The Motion *In Limine* : Pretrial Trump Card in Civil Litigation, 27 U.Fla.L. Rev. 531 at 545 (1975); Davis, Motions in Limine, 15 Clev.-Mar.L.Rev. 255 (1966); Rothblatt & Leroy, The Motion in Limine in Criminal Trials: A Technique for the Pretrial Exclusion of Prejudicial Evidence, 60 Ky.L.J. 611, 635–37 (1972). It is important that the motion state the *specific* matter that the party believes to be prejudicial, not that which is general in scope. *Lewis v. Buena Vista Mutual Insurance Association,* 183 N.W.2d 198, 201 (Iowa 1971) says:

The motion should be used, if used at all, as a rifle and not as a shotgun, pointing out the objectionable material and showing why the material is inadmissible and prejudicial. Since no one knows exactly how the trial will proceed, trial courts

would ordinarily be well advised to require an evidentiary hearing on the motion when its validity or invalidity is not manifest from the face of the motion.

■ The Order entered should be clear and unequivocal. It "should provide and advise counsel such ruling is without prejudice to the right to offer proof during the course of the trial, in the jury's absence, of those matters covered in the motion and if it then appears in the light of the trial record that the evidence is relevant, material and competent it may then be introduced, subject to opposing counsel's objections, as part of the record of evidence for the jury's consideration." *Twyford v. Weber,* 220 N.W.2d 919, 923 (Iowa 1974).

■ We should also like to point out that the trial court has the right to take the motion under advisement, reserving the right to rule upon the matter when it arises at trial. *City of Indianapolis, Dept. of Met. Dev. v. Heeter,* Ind.App., 355 N.E.2d 429 (1976).

In addition to the law review articles cited supra, to know and understand the serious problems that arise, see, Lafferty, Motion in Limine, 29 Ark.L.Rev. 215 (1975); Fetscher, The Motion in Limine—A Useful Procedural Device, 35–36 Mont.L.Rev. 362 (1974); Love, Pretrial Exclusionary Evidence Rulings, 1967 Wisc.L.Rev. 738; Holtorf, Motions to Limit Evidence, 46 Nebr.L. Rev. 502 (1967); Davis, 5 Washburn L.J. 232 (1966); Annot., 63 A.L.R.3d 311 (1975).

■ An order granting a "motion in limine" is not reversible error. If the order is absolutely prohibitive in nature and forbids the mention of prejudicial matters in the opening statement or during trial, and the order is violated, the court may in its discretion, upon motion by a party, declare a mistrial, or await the outcome of the trial, and then grant an appropriate remedy. During trial, when prejudicial evidence is admitted, over objection, or relevant evidence is offered in the absence of the jury and then excluded, reversible error may occur.

A "motion in limine" is a comparatively new and novel procedural device and is now used increasingly in various states to change the traditional rules for excluding prejudicial matters. This pretrial ruling replaces the ineffective, unrealistic and psychologically invalid admonitions given by the court to the jury, because an attorney is not forced to choose between (1) permitting prejudice to be planted by opposing counsel or (2) stimulating this implantation by his own objections. There is a common practice of attorneys posing prejudicial statements and questions. A shrewd lawyer can phrase the language of his statement or question so that prejudice will be planted by the mere presentation of the statement or question. If an attorney objects, and the objection is sustained, it will call the jury's attention to the improper statement or question and create the impression that his client has something to hide. The "curative measures" used by a court to remove the prejudicial impact of an improper statement or question is subject to serious doubt. "Often, to all practical intents and purposes, the judge's statement of the legal rules might just as well never have been expressed." Frank, Courts on Trial, p. 111 (1949).

■ We must remind attorneys that "[T]he presentation of excluded matter to the jury by suggestion, by the wording of a question, or by indirection, violated professional standards and counsel's duty to the court." *Burdick v. York Oil Company,* 364 S.W.2d 766, 770 (Tex.Civ.App.1963).

■ We hold that the trial court had the inherent power to hear and determine plaintiff's "motion in limine".

**(4) *Defendant's opening statement was proper.***

That portion of defendant's opening statement which plaintiff claims was prejudicial has been set forth supra. At the conclusion of the opening statement, plaintiff moved for a mistrial and the motion was denied. Plaintiff claims that reference was made to "specific acts of misconduct" which occurred after plaintiff's reputation

was allegedly damaged by defendant in 1973; that evidence of this nature is inadmissible.

Here again, opposing attorneys failed to discuss the scope and purpose of an opening statement, nor what effect remarks made have on the verdict of a jury, nor what is meant by "specific acts of misconduct". If this were done, it might assist this Court in arriving at a fair determination of the issue.

■ An opening statement is not evidence and the jury was so cautioned by the court prior to the opening statement, and later so instructed. U.J.I. 1.2; U.J.I. 17.7. The primary purpose of this procedure is to inform the jury of the nature of the case, both from the viewpoint of the plaintiff and the defendant. Each party attempts to show the jury how the evidence that will be presented will support its position. It has no binding force or effect. *State v. Alderette*, 86 N.M. 600, 526 P.2d 194 (Ct.App. 1974) (Sutin, J., dissenting). The burden is on the plaintiff to establish that the opening statements made by defendant, in all probability must have produced some effect upon the final results of the trial. *State Highway Commission v. Beets*, S.D., 224 N.W.2d 567 (1974); *State v. Wanrow*, 14 Wash.App. 115, 538 P.2d 849 (1975).

We have searched plaintiff's argument for reasons why defendant's opening statement affected the verdict of the jury and none were found.

■ There are at least four reasons why defendant's opening statement was proper.

*First*, defendant's opening statement did not refer to "specific acts of misconduct," if that reference is relevant. To be "specific", the statements must be detailed, minute, precise or particular in nature. A general statement of over-utilization of hospital facilities, record keeping, and fees charged to patients does not transform into specific acts of misconduct, until each act complained of is specified as to time, place, persons present, and the event that occurred. To hold that the statements made were specific, would deprive the defendant

of any use of the language to inform the jury of the poor reputation of the plaintiff in the medical community. We do not believe that the phrase "specific acts of misconduct" means that defendant was limited to statements such as "defendant had a poor reputation in the medical community".

Plaintiff's argument on this issue is confined to the admissibility in evidence of "specific acts of misconduct." This contention will be met later.

*Second*, defendant's statements were directed only to the issue of damages for loss of reputation claimed by plaintiff, and not to defendant's non-liability for defamation. The jury was instructed not to discuss damages unless they first determined liability. U.J.I. 17.8. The jury determined that defendant made no defamatory statements and was not liable. We cannot see how defendant's opening statements could have affected the verdict of the jury.

*Third*, the trial court gave U.J.I. 17.7 and U.J.I. 1.2. U.J.I. 17.7 states in part, ". . . neither these final discussions nor any other remarks or arguments of the attorneys made during the course of the trial are to be considered by you as evidence . . ." U.J.I. 1.2 states in part: "Remarks, arguments and statements of lawyers are not evidence." These instructions were cautionary guidelines that assisted the plaintiff. Defense counsel reiterated and elaborated on these instructions during the opening statement. It applied to the opening statements made by defendant, so that the statements made were not prejudicial error. But see, *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App.1976) (Sutin, J., dissenting).

*Fourth*, plaintiff's opening statement discussed damages that plaintiff suffered up to the time of trial. The gate was opened to permit the defendant to state that plaintiff's lack of reputation in the medical community resulted from his own actions and not from what defendant said three years before.

Defendant's opening statement was proper.

B. *Testimony of doctors about plaintiff's reputation in 1975 and 1976 on the issue of damages was not prejudicial.*

Plaintiff claims that testimony of defendant's doctors, that plaintiff's reputation in the years 1975 and 1976 was poor in the matter of over-utilization of hospital facilities, record keeping, and making charges that would not be reimbursed by insurance companies, was prejudicial.

One doctor, on direct examination, testified as follows:

Q. . . . [C]an you tell us what Doctor Proper's reputation is and has been for the last two years with respect to record keeping.

A. It has been bad at St. Josephs Hospital.

\* \* \*

Q. Now, can you tell us what Doctor Proper's reputation has been for the last two years with respect to over-utilization of facilities.

A. It has not been good.

Another doctor testified as follows:

Q. . . . [A]re you reluctant to refer patients to Doctor Robert Parsons [sic] [Proper]?

A. Yes, I am somewhat reluctant to do this at the present time.

Q. Can you tell the jury why you are reluctant.

A. I am reluctant, not because I am in any way concerned about his skills or ability, but because I am concerned about insurance coverage, insurance being able to cover the bills that might be incurred by utilizing his services.

Q. Do insurance companies cover only certain amounts for certain procedures?

A. Well, there are varying types of insurance contracts, but in New Mexico, most of the major insurance companies have a system under which they cover what is called usual and customary fees.

On the evidence with reference to record keeping, plaintiff contends that "the jury probably concluded this was a very serious offense and thus was prejudiced in its appraisal of the facts of the case."

On the evidence with reference to insurance coverage, plaintiff contends that "[T]his testimony as to not sending patients to Dr. Proper because all his charges would not be reimbursed by insurance companies was designed to prejudice the jury, had no probative value on the issue of the reputation that had been damaged by Dr. Mowry in 1973, and was again an attempt to overload the defense with inadmissible testimony. The cumulative effect of this type of testimony could only be prejudicial to the plaintiff."

Plaintiff believes the trial court admitted defendant's evidence of reputation in reliance on Rule 405(b) of the New Mexico Rules of Evidence [§ 20–4–405(b), N.M.S.A. 1953 (Repl.Vol. 4, 1975 Supp.)]. This rule allows proof of specific instances of conduct only when the character or trait of character of a witness is an essential element of a claim or defense. Therefore, the trial court erred. Plaintiff is mistaken.

■ The terms "character" and "reputation" are often used interchangeably and as synonyms. The distinction, however, is that "character" is what a person is. "Reputation" is what a person is thought to be. V Wigmore on Evidence § 1608 (Chadbourne Rev. 1974); *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Hassell v. State*, 229 Miss. 824, 92 So.2d 194 (1957); *State v. Blake*, 157 Conn. 99, 249 A.2d 232 (1968); *Rafuse v. State*, 215 So.2d 71 (Fla.App.1968).

Plaintiff's character and trait of character is not an essential element of defendant's defense. The trial court did not rely on Rule 405(b). The trial court carefully limited the testimony of defendant's witnesses to plaintiff's general reputation in the medical community, not plaintiff's character, and no specific acts of misconduct were permitted. The trial court made it clear that defendant must avoid "chapter and verse" as to specific acts of misconduct.

■ The trial court admitted the testimony because it was relevant under Rules 401, 402 of the New Mexico Rules of Evidence. If the evidence is not relevant, it is not admissible. But if the evidence tends to make a consequential fact more or less probable, it is relevant and, therefore, admissible.

Plaintiff misconceives the purpose for the admission of this testimony, and its relevance.

Plaintiff sued defendant for defamation growing out of allegedly false memoranda, statements and discussions defendant had with the Board of Governors of the Lovelace Clinic resulting in plaintiff's discharge from the staff of the clinic; that as a result of defendant's false accusations, plaintiff was damaged in his reputation as a competent physician and sustained a loss of income. Damage to plaintiff's reputation was one element of damages for which plaintiff sought relief.

■ Before plaintiff was entitled to any damages, plaintiff had to prove that defendant made slanderous statements about plaintiff in order to establish liability. The jury determined that no such slanderous statements were made and plaintiff was not entitled to any damages. Nevertheless, plaintiff claims that the admission of the reputation evidence was prejudicial error.

■ Harmless error vs. prejudicial error is discussed in *Maxwell v. Santa Fe Public Schools*, 87 N.M. 383, 534 P.2d 307 (Ct.App. 1975) (Sutin, J., specially concurring). The admission of evidence is harmless error unless it affects the substantial rights of a party. If the trial court errs in a ruling that relates to the substantial rights of a party, it is ground for reversal unless it affirmatively appears from the whole record that it is not prejudicial.

■ In cases of this nature, the reception of the evidence must be shown to have affected the verdict of the jury before this Court will hold that a substantial right has been impaired. We cannot speculate on whether the evidence affected the jury verdict because the manner in which they arrived at the verdict is an unknowable.

"The incompetent evidence complained of cannot be said to be of such a character as to affect the substantial rights of the [plaintiff] or to go to the merits of the cause." *Colbert v. Journal Publishing Co.*, 19 N.M. 156, 142 P. 146 (1914).

In *Tevis v. McCrary*, 75 N.M. 165, 402 P.2d 150 (1965), an action for damages was filed for an alleged contamination of plaintiff's domestic well by defendant. A judgment was entered for plaintiff and defendant appealed. Defendant claimed the trial court erred in the admission over objection, of an exhibit, which was an estimate of the cost of drilling and equipping a new well and piping water therefrom to the plaintiff's home. It was plaintiff's theory that this was proof of special damages. The Court said:

> It is implicit from the jury's verdict that no special damages were awarded, and it is therefore incumbent upon the defendant to show in what manner the admission of this evidence was prejudicial. . . . The defendant has totally failed to demonstrate how the admission of the exhibit operated to his prejudice. There is no showing in the record, other than pure speculation, that the introduction of this exhibit in any way influenced the jury. [75 N.M. at 167, 402 P.2d at 151].

■ This rule is applicable to the instant case. If plaintiff had been awarded general or special damages, a claim of error could be made that evidence of "specific acts of misconduct" two and three years after the defamation occurred was prejudicial error. The fact that no damages were awarded simply means that the jury found that no slanderous statements were made, and the jury did not consider the claimed inadmissible evidence on poor reputation.

"Whether in an action for *defamation* the defendant may use the *plaintiff's poor reputation* (or lack of reputation) *to mitigate the damages* has been one of the most controverted questions in the whole law." [Emphasis by author]. I Wigmore on Evi-

dence, § 70 at 492 (3rd Ed. 1940). See also, 50 Am.Jur.2d Libel and Slander § 476 at 1007–1008 (1970); V Wigmore on Evidence § 1618 (Chadbourne Rev. 1974); 53 C.J.S. Libel and Slander § 267 (1948).

We do not believe that the reputation evidence prejudiced the jury in its appraisal of the facts, nor was it cumulatively prejudicial.

C. *The refusal of plaintiff's requested instruction was not error.*

■ Plaintiff requested and the court refused the following instruction:

It is not necessary in a libel or slander action that the defamatory words apply only to the plaintiff. A member of a group of identifiable persons to whom the words apply may maintain the action for libel or slander.

Plaintiff requested and the court gave the following instruction:

A publication may be defamatory as to another person, although that person's name is not stated. In such circumstances, the plaintiff must introduce evidence that the defamatory meaning attached to him. The reference may be an indirect one, with the identification depending upon the circumstances known to the hearers, and it is not necessary that every listener understand it, so long as there are some who reasonably do understand it to apply to the plaintiff.

The facts surrounding plaintiff's claim for defamation arose during a meeting of the general staff on December 3, 1973. At this meeting, the minutes show that defendant said:

". . . [O]ne does not get a free ride with a M.D. degree, not here. . . . If one wants a security blanket, go get a government job." Defendant "stated that as he looked around the room, he certainly saw some men in the room who practiced damn good medicine who are old and he also sees some men who practice damn poor medicine. . . . [T]hat one had better make up his mind what kind of an institution is wanted right now, inasmuch as we do have a

choice to make. One can either subscribe to the medocrity, [sic] year in and bloody year out or one can go after the kind of an institution that is wanted . . . .."

There was testimony pro and con whether these statements referred to plaintiff.

A review of the instructions refused and given show that the instruction given adequately covered the instruction refused and presented to the jury plaintiff's legal theory on this matter.

D. *Court's instructions on standard by which defendant was governed in making a statement was invited error.*

■ The trial court gave the following instruction:

Reckless disregard of truth or falsity is not measured by whether a reasonably prudent man would have published or would have investigated before publishing. It requires that Dr. Mowry must have in fact entertained serious doubts as to the truth of his statements.

Defendant objected as follows:

Plaintiff objects to the court's Instruction No. 6 which states that the defendant must, in fact, have entertained serious doubts as to the truth of the statements, as this is contrary to the law in New Mexico as established in *Steward v. Ging* and *Reed v. Melnick.* The vice in the instruction is that if he operated from motives of his own, this would be sufficient to establish the liability of defendant.

*Reed v. Melnick,* 81 N.M. 608, 471 P.2d 178 (1970) and *Stewart v. Ging,* 64 N.M. 270, 327 P.2d 333 (1958) do not reach the vice complained of. In New Mexico, the rule was stated in *Salazar v. Bjork,* 85 N.M. 94, 97, 509 P.2d 569, 572 (Ct.App.1973):

. . . [T]he law should protect only those who act reasonably and with a reasonable belief of the truth of their remarks.

"Reckless disregard of truth or falsity" is not the rule in New Mexico. But this

claimed error arose out of plaintiff's requested instruction on damages, which the court gave. It read in part as follows:

6. And in the event you find that defendant made a defamatory statement or statements and knew that the statement was false *or made the statement with reckless disregard for the truth*, then and in that case you may award damages for the making of the statement . . . [Emphasis added.]

Defendant presented the above instruction to define the phrase, "reckless disregard of the truth". This language came from *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). This case involved a televised political speech in which a defamation action was brought by a public official. In the course of its opinion, the Court said:

These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice. [390 U.S. at 731, 88 S.Ct. at 1325].

Since 1968, this standard by which to judge the truth or falsity of a statement made has been studiously followed in various states of the union, but it has not yet reached New Mexico.

Nevertheless, where "reckless disregard for the truth" is introduced into the case by plaintiff, complaints cannot be made of the standard by which this concept can be judged. We have consistently followed the ethical maxim that "no party can profit by his own wrong." *McCauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968); *Hodgkins v. Christopher*, 58 N.M. 637, 274 P.2d 153 (1954); *Otero v. Physicians and Surgeons Ambulance Serv., Inc.*, 65 N.M. 319, 336 P.2d 1070 (1959); *Gonzales v. Sharp & Fellows Contracting Co.*, 48 N.M. 528, 153 P.2d 676 (1944).

The giving of the above instruction was invited error and not reversible error.

Plaintiff also complained of two instructions given on qualified privilege. Plaintiff did not object to these instructions.

Affirmed.

IT IS SO ORDERED.

LOPEZ and KASE, JJ., concur.