845 P.2d 753

**CITY OF SANTA FE, a municipal corporation, Petitioner–Appellant,**

v.

**John KOMIS and Lemonia Komis, his wife, Respondents–Appellees.**

No. 20325.

Supreme Court of New Mexico.

Aug. 26, 1992.

Lamb, Metzgar, Lines & Dahl, P.A., Bernard P. Metzgar, Albuquerque, for petitioner-appellant.

Marchiondo & Vigil, P.A., Michael E. Vigil, Albuquerque, for respondents-appellees.

## OPINION

FRANCHINI, Justice.

The City of Santa Fe appeals from a jury verdict entered in favor of John and Lemonia Komis in a partial taking condemnation proceeding. The City asserts that the damages awarded for loss in the market value to the remainder of the Komis's land are excessive. Because this issue involves significant questions of law, in addition to being one of substantial public interest, the Court of Appeals certified this case to us pursuant to NMSA 1978, Section 34–5–14(C)(2) (Repl.Pamp.1990) and SCRA 1986, 12–606.

This appeal is based upon the admissibility and exclusion of certain evidence during the trial. The underlying issue that forms the basis of the trial court's rulings is whether in a partial condemnation action a property owner is entitled to receive compensation for the diminution of value to the remainder of the property caused by public perception.[1] In this case, the taken land is to be used for the construction of a highway to transport nuclear waste to the Waste Isolation Pilot Project (WIPP) site near Carlsbad, New Mexico. The specific issue to be decided is whether the public fear of this use, whether well-founded or not, which causes a diminution in value to the remaining land not taken, is compensable. Our answer is yes, and we affirm on this issue.

Additionally, the City contends that the trial court lacked the jurisdiction to modify the interest rate on the judgment after a notice of appeal was filed. We agree and reverse and remand for entry of judgment consistent with this opinion.

### I.

Of the Komis's 673.77 total acreage, 43.-431 acres were taken by the City. The property was condemned on November 14, 1988, and the highest and best use at that time was speculative investment for subdivision into rural homesites or for recreational purposes. The property was appropriated to permit construction of a bypass around the City. The bypass will be used to transport hazardous nuclear waste from Los Alamos to the WIPP site. Because this condemnation case involved a partial taking, the value of the property taken and damages to the remainder were at issue and were in dispute. It is the valuation of the loss to the remaining property as increased by severance damages for loss due to public perception of the effect of transporting radioactive waste material that is being appealed.

Following a jury trial, the Komises were awarded $884,192 in compensation, representing $489,582.50 for the value of the land taken, $60,794.50 for severance damages to the buffer zone, and $337,815 for severance damages for perceived loss due

---

1. Under NMSA 1978, Section 42–2–15(A), the Komises were entitled to "the measure of compensation for all property taken, and also the basis of damages for property not taken but injuriously affected in cases where such damages are legally recoverable; the amount of the award shall be determined from the evidence and not be limited to any amount alleged in the petition or set forth in the answer." Under New Mexico law the measurement of damages recoverable for a partial taking is the difference between the fair market value of the entire property immediately before the taking and the fair market value of the remaining property immediately after the taking. *See* SCRA 1986, 13–704 (uniform jury instruction stating measure of damages for partial taking).

to public perception. In the opinion of the Komis's expert, the loss in market value of the property not taken due to public perception was $1,000,000. The jury verdict was entered on August 1, 1991. The Komises filed a motion to modify judgment on August 20, asking the trial court to increase the interest rate from six to eight percent. The City filed a notice of appeal on August 29. By letter of judgment entered on August 30, the trial court granted the Komis's motion and increased the interest rate as requested.

On December 17, 1991, the parties filed a joint motion to transfer jurisdiction of this appeal. By order entered January 10, 1992, the Court of Appeals certified this matter to us.

## II.

The City argues, under six points, that reversible error was committed in the admission and exclusion of certain evidence, and in a final point that the trial court did not have jurisdiction to modify the interest in the judgment. Before addressing the evidentiary rulings, we first decide whether, in a partial condemnation action, a property owner is entitled to receive as compensation the diminution in value of the remainder of the property caused by public perception of the use to which the condemned property will be put.

There are currently three judicial approaches to this issue. *See Willsey v. Kansas City Power & Light Co.*, 6 Kan. App.2d 599, 631 P.2d 268 (1981) (summarizing cases); Vitauts M. Gulbis, Annotation, *Fear of Powerline, Gas or Oil Pipeline, or Related Structure as Element of Damages in Easement Condemnation Proceeding*, 23 A.L.R.4th 631 (1983) (same). In *Willsey*, the Kansas Court of Appeals examined the three different approaches taken by various courts. The "fear" addressed in *Willsey*, and in most of the cases surveyed in the opinion, is fear of high-voltage electric lines. The first view holds that the fear is "based on pure speculation by an ignorant public and can never be an element of damages even if it affects the market value of the land." *Id.*, 631

P.2d at 273–74; *see Alabama Power Co. v. Keystone Lime Co.*, 191 Ala. 58, 67 So. 833, 836–37 (1914).

The second view holds that, "while conjectural damages are noncompensable, if the fear is *shown to be reasonable* (or at least not wholly unreasonable) and in fact affects market value, the loss *is* compensable." *Willsey*, 631 P.2d at 274; *see Dunlap v. Loup River Pub. Power Dist.*, 136 Neb. 11, 284 N.W. 742, 745–46 (1939).

The third view holds that impact on market value caused by "fear" may be shown and compensated without proving the reasonableness of that fear. *Willsey*, 631 P.2d at 274; *see Hicks v. United States ex rel. TVA*, 266 F.2d 515, 521 (6th Cir.1959). This view was reaffirmed in *United States ex rel. TVA v. Easement & Right of Way*, 405 F.2d 305 (6th Cir.1968). In *TVA*, the court noted that many studies demonstrating the safety of power lines had been conducted. *Id.* at 309. The court then stated:

> However, in final analysis, we are concerned only with market value. Although these studies may show objectively the complete safety of these structures, we are not convinced that certain segments of the buying public may not remain apprehensive of these high voltage lines, and therefore might be unwilling to pay as much for the property as they otherwise would.

*Id.* Under this view, compensation is awarded for loss of market value even if the loss is based on fears not founded on objective standards.

Of the three views, we adopt the third. Our objective in a condemnation case is to compensate the landowner for damages actually suffered. "Damages which are speculative, conjectural, or remote are not to be considered for compensation." *Ryan v. Kansas Power & Light Co.*, 249 Kan. 1, 815 P.2d 528, 535 (1991). However, if loss of value can be proven, it should be compensable regardless of its source. Thus, if people will not purchase property because they fear living or working on or near a WIPP route, or if a buyer can be found, but only at a reduced price, a

loss of value exists. If this loss can be proven to the jury, the landowner should be compensated. The jury is the finder of fact. The jury weighs testimony, determines credibility of witnesses, reconciles inconsistent or contradictory statements, and determines where the truth lies. *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 89, 428 P.2d 625, 628 (1967). The jury in this case was properly instructed and, by their verdict, found a loss of value and awarded damages for that loss. Of the $1,000,000 loss estimated by the Komis's expert for public-perception damages, the jury awarded $337,815.

### III.

█ The next series of questions which are presented address whether the trial court properly admitted or excluded certain evidence. The City argues that the probative value of certain evidence admitted was substantially outweighed by the danger of unfair prejudice and that the court erred in admitting the evidence. *See* SCRA 1986, 11–403. The trial court is vested with a great deal of discretion in applying Rule 403, and we will reverse the trial court's decision to admit or exclude evidence, only upon a showing that the court abused its discretion. *Mac Tyres, Inc. v. Vigil*, 92 N.M. 446, 448, 589 P.2d 1037, 1039 (1979). The trial court abuses its discretion when the movant can demonstrate that the court's rulings were clearly against the logic and effect of the facts and circumstances before the court. *See Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982) (holding that abuse of discretion standard, applicable to review of court acting in equitable capacity, requires trial court's decision to be contrary to logic and reason), *overruled on other grounds, Universal Life Church v. Coxon*, 105 N.M. 57, 728 P.2d 467 (1986).

By its first point of error, the City contends that prejudicial error resulted by allowing the jury to consider the results of a public-opinion survey conducted by Zia Research Associates, Inc. We hold that admitting the poll results was not an abuse of discretion.

Zia was commissioned to measure public perceptions of the value of property near the Santa Fe County bypass. The poll was prepared by Ron Faich, who has a Ph.D. in sociology with an emphasis on research methods and statistical analysis. Faich has over thirty years experience in survey research work. The poll revealed that ninety-three percent of the residents of Santa Fe County were familiar with the WIPP property and eighty-nine percent were familiar with the proposed bypass. Seventy-one percent of the respondents felt that residential property near the bypass would sell for less money because of its location and the same percentage also felt the property would decrease in value.

Respondents were also asked their opinion of the percentage value increase or decrease to the property caused by the WIPP route. Forty-one percent of the residents of Santa Fe County believed that residential property near the road would sell for between eleven and thirty percent less than comparable property not in proximity to the road.

█ There was no abuse of discretion in admitting the Zia poll. The poll was an effective way of showing public perception and it was relevant evidence under SCRA 1986, 11–401.[2] The weight of authority in the United States allows the admission of public-opinion polls when the results of the poll are relevant. *See* M.C. Dransfield, Annotation, *Admissibility and Weight or Surveys of Polls of Public or Consumers' Opinion, Recognition, Preference, or the Like*, 76 A.L.R.2d 619, 628–29 (1961) (citing, in section 3, federal cases and cases from various states supporting the admis-

---

**2.** Evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. *See McNeilab, Inc. v. American Home Prods. Corp.*,

848 F.2d 34, 38 (2d Cir.1988) (stating that affirmance of admission of survey results is proper under Rule 401 if survey alone or in conjunction with other evidence made the existence of any consequential fact more or less probable).

sion of public opinion polls).[3]

As stated previously, we have adopted the view that the government entity must pay damages if it is shown that fear of a danger exists and that fear affects market value. The poll was an effective way to show buyer fear of the potential danger and evidence of that fear is relevant. *Florida Power & Light Co. v. Jennings*, 518 So.2d 895, 899 (Fla.1987). Three months before the taking, ninety-four articles, pictures, and letters to the editor appeared in the local media concerning the WIPP bypass or some aspect of it. The poll showed that this fear was a matter of common knowledge among those persons from whom a purchaser for the property would probably come. *See Fanning v. Mapco, Inc.*, 181 N.W.2d 190, 197 (Iowa 1970). Therefore, the poll was a reflection of the general public's attitude towards the WIPP bypass.

To the extent the poll can be viewed as an expression of opinion concerning fear and its probable effect on the value of the property, the rule in New Mexico is that admissibility of lay opinion testimony is within the discretion of the trial court. *Hansen v. Skate Ranch, Inc.*, 97 N.M. 486, 491, 641 P.2d 517, 522 (Ct. App.1982). In this regard, a Kansas court has held that a nonexpert witness can testify concerning fear in the marketplace if the proponent qualifies the witness by showing that the witness has knowledge of fears held by other persons. *Ryan*, 815 P.2d at 535. "Fear in the marketplace is not a technical subject requiring professional training to discern. Rather, it is dependent upon knowing the opinion of others as to fear." *Id.*

Even if we assume that the trial court committed error in allowing opinion data on the percentage value increase or decrease of the property not taken, the error was harmless. The question on value was only one of many questions in sixty pages of poll results. Its admission was harmless given all the other properly admitted evidence with regard to the decrease in property value. *See Davis v. Davis*, 83 N.M. 787, 789, 498 P.2d 674, 676 (1972) (admitting hearsay evidence harmless when viewed in light of all evidence). Additionally, admission of evidence is harmless unless it affects the substantial rights of a party. *Proper v. Mowry*, 90 N.M. 710, 718, 568 P.2d 236, 244 (Ct.App.1977). We do not believe that this evidence prejudiced the jury in its appraisal of the facts. After reviewing the record we feel that the trial judge handled the trial in a fair, even-handed manner. The City presented voluminous evidence to support its case and counter the Komis's contentions. For example, the City's expert, Patchin, on three occasions expressed his opinion that the transportation of radioactive waste would not reduce the value of the remainder of the property. He based his opinion on the safety record of transporting radioactive waste and his inability to find value discrimination from other types of toxic materials transported. Patchin also testified that he gave the Zia poll no weight when determining value. Considering all the evidence admitted at trial, admitting the opinion data on percentage value increase or decrease did not prejudice the City's rights. *See Maxwell v. Santa Fe Pub. Schs.*, 87 N.M. 383, 386, 534 P.2d 307, 310 (Ct.App. 1975) (discussion of harmless versus prejudicial error). The Zia poll also was used by the Komis's expert witness, Richard Godfrey, an MAI appraiser, to provide a foundation for his expert testimony on the market value of the property not taken. The City's second point of error questions whether the poll was a valid basis for Godfrey's opinion. We find no abuse of discretion by the trial court. Godfrey based his opinion that the WIPP route affected the

---

**3.** Generally, hearsay is not an obstacle. *See Bank of Utah v. Commercial Sec. Bank*, 369 F.2d 19 (10th Cir.1966), *cert. denied*, 386 U.S. 1018, 87 S.Ct. 1374, 18 L.Ed.2d 456 (1967); *see also Zippo Mfg. Co. v. Rogers Imports Inc.*, 216 F.Supp. 670 (S.D.N.Y.1963) (finding weight of case authority, consensus of legal writers, and reasoned policy considerations all indicate hearsay rule should not bar admission of properly conducted public surveys). Polls have also been admitted as present state-of-mind exceptions to hearsay rule. *See Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 447 (5th Cir.1973).

value of the remaining property's value on several factors including, but not limited to, the Zia poll. These factors included a 1989 videotape entitled *The WIPP Trail, a Nation's Crisis Dumped on New Mexico,* publications in the *Santa Fe New Mexican,* letters written and actions taken by the Santa Fe Board of Realtors, a book by a Santa Fe realtor called *Understanding Santa Fe Real Estate,* and Godfrey's review of other appraisals of property in the area.

The City argues that loss of market value based on fear was not proven with a reasonable degree of probability. It is difficult to prove market value loss when there are no actual sales of comparable property. Yet, damages should not be denied because they are difficult to prove. A negative public perception exists about the WIPP route and it was relied upon by Godfrey, along with various other informational sources, to reach his opinion on loss of value. The weight to be given Godfrey's opinion evidence presented was a matter for the jury's determination. Godfrey's partial reliance on the Zia poll to corroborate and provide a foundation for reaching his opinion on damages was proper. We agree with the Supreme Court of Kansas that: "Non-expert witnesses are not qualified to testify concerning the value of the property. However, a non-expert qualified witness may corroborate and provide foundation testimony for the expert testimony on damages." *Ryan,* 815 P.2d at 535. This, in our view, is what occurred here.

The City, for its third point of error, asserts that the videotape entitled *The WIPP Trail, a Nation's Crises Dumped on New Mexico* should not have been admitted into evidence because its probative value was greatly outweighed by its prejudicial effect. Once again, we find no abuse of discretion by the trial judge. The trial judge is authorized under SCRA 1986, 11–403 to exclude relevant evidence if its probative value is greatly outweighed by the danger of unfair prejudice. The party opposing the admission of evidence has the burden of persuading the judge to

exclude it. *Lenz v. Chalamidas,* 109 N.M. 113, 116, 782 P.2d 85, 88 (1989). The trial court has a great deal of discretion under Rule 403 in admitting or excluding evidence, and we will reverse only when it is clear that the court abused its discretion. *Mac Tyres,* 92 N.M. at 448, 589 P.2d at 1039.

The videotape was originally broadcast on public television in 1989. Prior to trial, the City filed a motion in limine to exclude the videotape. At the motion hearing, the City argued that the videotape was both prejudicial and hearsay. The City has abandoned the hearsay issue by failing to brief it on appeal, relying only upon the opinion poll's prejudicial effect on the jury. Issues not briefed will not be reviewed by this Court. *Aragon v. Rio Costillo Cooperative Livestock Assoc.,* 112 N.M. 152, 153, n. 1, 812 P.2d 1300, 1301, n. 1 (1991).

The Komis's expert, Godfrey, relied in part on the videotape in formulating his opinion that public perception of harm causes diminution in value. Although not a reflection of public perception, the videotape was evidence of the information the public relies on to formulate its perception. Godfrey testified at the motion hearing that the videotape was the type of information people in his field rely upon to form an opinion regarding the effect of public perception of value. SCRA 1986, 11–703.

Also at the hearing, various arguments were presented about the tapes probative value versus its prejudicial damage. The City requested that the trial judge view the videotape prior to making his ruling. After viewing the tape, the trial judge ruled it was relevant and not so prejudicial that its probative value was outweighed by its prejudicial effect.

Furthermore, before the videotape was actually played to the jury, the trial judge explained to them that experts, such as Godfrey, are allowed to give opinions based upon hearsay evidence. He advised the jury that he was allowing the videotape to be admitted not for the truth of what was contained in it, but, because Godfrey relied upon it in formulating his

opinion.[4]  He also told the jury it was up to them to decide what weight to give Godfrey's opinions and after taking everything into consideration, which experts to give the most weight to.  It was important for the jury to know how Godfrey reached his opinion, and the trial judge took precautions to limit any prejudicial effect.  "To deprive a jury of this evidence is to divest it of a significant source of relevant information on the value of the property, thereby impairing its function of evaluating the weight and credit to be given the opinion." *State ex rel. State Highway Comm'n v. Carlson,* 463 S.W.2d 74, 78 (Mo.Ct.App. 1970).  We hold that the court's decision was not contrary to logic and reason. *Three Rivers Land Co.,* 98 N.M. at 694, 652 P.2d at 244.

The City's fourth point of error concerns the court's refusal to allow evidence on the testing and safety features of the WIPP transportation system.  The court limited the testimony of Kevin Donovan, manager of the United States Department of Energy's transuranic waste management system at the WIPP site.  Although the court allowed him to testify on basic transportation issues, the court excluded Donovan's testimony about safety programs, the probability of an accident, and other safety issues.

■ Donovan's testimony went to the reasonableness of the public's perception.  Whether the public's fear was reasonable does not matter under the standard we have adopted.  Thus, in *San Diego Gas & Electric Co. v. Daley,* 205 Cal.App.3d 1334, 253 Cal.Rptr. 144, 152 (1988), the court refused to admit evidence that electromagnetic radiation from utility overhead lines would not be harmful because the question was not whether such radiation is harmful, but whether public perception of harm has a depressing effect on property value.  Also, in *TVA,* 405 F.2d at 309, the court

held that although studies may demonstrate complete safety of power lines, the issue remains whether certain segments of the buying public remain apprehensive.

Whether the transportation of hazardous nuclear materials actually is or is not safe is irrelevant; the issue is whether public perception of those dangers has a depressing effect on the value of the property not taken.  The trial judge did not abuse his discretion by limiting Donovan's testimony.

■ The City for its fifth point of error asserts that the court erred in excluding a study of property values over a five-year period on St. Francis Drive in Santa Fe.  The court excluded the proffered study and related testimony of Denton Colvin, the preparer of the study.  The study showed that property values were increasing along St. Francis Drive even though it is apparently being used to transport radioactive materials to Los Alamos Laboratories.  The City sought to introduce the study to show that transporting radioactive materials does not adversely affect the realities of the marketplace.  However, what the study did not show was whether buyers and sellers along St. Francis Drive knew that the road was being used as a transportation route for radioactive materials.  Also, no attempt was made to show whether those buyers and sellers had a perception of harm associated with the transportation of hazardous nuclear materials and what effect, if any, public perception had on prices for which property was being bought and sold along St. Francis Drive.  In addition, while the study showed that certain dollars were paid for the St. Francis Drive properties, no attempt was made to correlate the actual prices paid with public perception of harm, if any, associated with the transportation of hazardous nuclear materials.  Finally, no attempt was made to compare the St. Francis properties to the

---

**4.**  Justifiable reliance by an expert does not make hearsay admissible.  Rule 11–703 specifically provides that facts or data reasonably relied upon by experts need not be admissible in evidence, although, under Rule 11–705, the expert may be required to disclose such facts or data on cross-examinations.  "While experts may rely on hearsay under Rule 703, the hearsay itself is not admissible." *Coulter v. Stewart,* 97 N.M. 616, 617, 642 P.2d 602, 603 (1982) (citing *Wilson v. Leonard Tire Co., Inc.,* 90 N.M. 74, 76, 559 P.2d 1201, 1203 (Ct.App.1976), *cert. denied,* 90 N.M. 9, 558 P.2d 621 (1977)).

Komis's property. Accordingly, the proffered testimony was properly excluded.

The City's sixth point of error concerns the court's limitation of testimony by Peter Patchin, MAI, the City's appraiser. The City argues that the exclusion of Patchin's testimony regarding the Zia poll's conclusion as it relates to actual market loss was erroneous. The City argues that although Patchin was permitted to testify that he gave the Zia poll no weight, he was prevented from explaining why. According to his extensive voir dire, the City argues, he would have explained that based on two prior experiences where polls were performed and where he thereafter performed appraisals, the data from the polls does not hold up to the actual market data.

First, Patchin was not an expert on how to conduct a public-opinion poll, therefore his voluntary criticism on the methodology of the poll was properly excluded. More importantly, a review of Patchin's entire testimony showed no abuse of discretion by the trial court. Patchin testified that the factors he relied on in concluding no loss of value to the Komis's property were the safety record in the transportation of radioactive waste material and his inability to find value discrimination for other types of toxic materials transported. Patchin also stated that his prior experience with polls "didn't really influence my judgment in regards to the [Komis's] property." His two previous experiences included possible diminution in value to single-family residences caused by airport overflight noises, and possible decrease in home values due to the location of group homes in the neighborhood. In his prior experience with polls, his appraisals were done independently, two to seven years after the polls. His reports did not even mention the polls, and he did not compare the results of his studies in either case to the results contained in the polls. The trial court properly exercised its discretion in limiting Patchin's expert testimony. Patchin's conclusions and the basis for his conclusions were fully explained to the jury. The limitations placed by the trial court on Patchin's testimony were reasonable and well within the

bounds of discretion. *See Leon, Ltd. v. Carver*, 104 N.M. 29, 35, 715 P.2d 1080, 1086 (1986) (admitting or excluding expert testimony is within discretion of trial court).

## IV.

For its final point of error, the City contends that the trial court lacked jurisdiction to modify the judgment after a notice of appeal was filed. We agree. Judgment was entered August 1, 1991. The Komises filed a motion to modify the judgment to change the interest rate from six to eight percent. The motion was served upon counsel for the City on August 20. On August 29, the City filed its notice of appeal. The trial court granted the motion to modify by a letter of judgment entered on August 30. We note that the motion was served upon opposing counsel nineteen days after entry of judgment. Our rules of civil procedure require that such motion be served "not later than ten days after entry of judgment." SCRA 1986, 1–059(E).

The trial court was without jurisdiction to modify the interest rate because the City filed the notice of appeal on August 29, 1991. The Komises, relying on our recent case, *Kelly Inn v. Kapnison*, 113 N.M. 231, 824 P.2d 1033 (1992), argue that the judgment was not "final," and therefore, the trial court retained jurisdiction to modify the interest award. We disagree. In *Kelly Inn*, we held "in collateral matters not involved in the appeal, such as determining the propriety and amount of attorney's fees, the trial court retains jurisdiction." *Id.* at 243, 824 P.2d at 1045. We adopted that position from a federal court of appeals case, *Garcia v. Burlington N.R.R.*, 818 F.2d 713 (10th Cir.1987). In *Garcia*, the court held that the district court lacked jurisdiction to award prejudgment interest after an appeal had been taken. *Id.* at 721–22. Here, as in *Garcia*, the issue is not collateral. The motion to modify challenged the constitutional validity of the lower interest rate in the special alternative condemnation procedure. NMSA 1978, §§ 42-2-1 to -24 (Orig.Pamp.). By granting the motion, the

court implicitly addressed that issue. The modification of the interest rate was not the type of collateral or separate matter contemplated in *Kelly Inn*. Thus, the trial court had no jurisdiction to modify the interest rate.

Based on the foregoing, we affirm the judgment of the trial court except in its modification of the judgment to change the interest rate from six to eight percent. On that issue, we reverse and remand for an entry of judgment consistent with this opinion.

IT IS SO ORDERED.

FROST, J., concurs.

RANSOM, C.J. (specially concurring).

RANSOM, Chief Justice (specially concurring).

I concur in the foregoing opinion notwithstanding reservations I harbor with respect to evidence of polls showing a lay opinion that residential property near the bypass would sell for between eleven and thirty percent less and would decrease in value. We properly hold that fear which impacts on market value may be shown without proving the reasonableness of that fear. While the nature and extent of fear may be shown through polls, we should emphasize that the actual impact on market value requires expert opinion testimony and cannot rest on the speculation of those who are suffering from what well may be irrational fear. *Hansen v. Skate Ranch, Inc.*, 97 N.M. 486, 491, 641 P.2d 517, 522 (Ct.App.1982) (applying Evidence Rule 11–701 which specifically requires that lay testimony be rationally based); *Ryan v. Kansas Power & Light Co.*, 249 Kan. 1, 815 P.2d 528 (1991). As *Ryan* states:

> The general purpose of allowing expert testimony on fear of electrical transmission lines is to show the factors considered by the witness in reaching an estimated value of the property and damages suffered. *Non-expert witnesses are not qualified to testify concerning the value of the property.* However, a non-expert qualified witness may corroborate and provide foundation testimony for the expert testimony on damages. A landowner who is qualified to testify as to the value of his own property is prohibited from testifying about personal fears of electrical transmission lines and [their] effect on the value of the property. *However, the landowner and other non-expert witnesses are not precluded from testifying about fear in the marketplace once the individual has been qualified by showing he has knowledge of such fears other than his own.* Fear in the marketplace is not a technical subject requiring professional training to discern. Rather, it is dependent upon knowing the opinion of others as to fear.

*Id.*, 815 P.2d at 535 (emphasis added) (citation omitted).

I do agree with my colleagues, nonetheless, that error in admitting this and other evidence appears not inconsistent with substantial justice in view of all the evidence at trial. It is the well-founded policy of this Court that, "at every stage of the proceeding [it] must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." SCRA 1986, 1–061.