**COLONIAL PIPELINE COMPANY,**
Plaintiff-Appellee,

v.

**Robert Lee EATHERLY and Frances B. Eatherly, Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

July 1, 1981.

Certiorari Denied by Supreme Court
Sept. 21, 1981.

Stafford McNamee, Jr., Bass, Berry & Sims, Nashville, for plaintiff-appellee.

I. R. Schulman, Angus Gillis, III, Schulman, Pride & LeRoy, Nashville, for defendants-appellants.

## OPINION

LEWIS, Judge.

Plaintiff filed its petition to acquire by condemnation a perpetual right-of-way and

easement twenty feet in width across defendants' 16.7 acres of land located in Davidson County, Tennessee. Plaintiff also sought a temporary working easement of thirty feet on one side and five feet on the other side of the permanent easement.

Defendants, in their answer, raised no question regarding the right of plaintiff to take the easements sought. Thereafter, an order was entered sustaining the petition for condemnation. Subsequently, the jury of view nominated and appointed by order of the Trial Court found that the total damages to defendants for the permanent and temporary easements and incidental damages to the remainder of the property were $14,275.00. Defendants appealed from the report of the jury of view.

The case was then tried in the Circuit Court on March 19, 20, and 24, 1980. The jury returned a verdict of $3,840 for the permanent easement and $928 for the temporary easements, for a total of $4,768, and found that there were no incidental damages to the remainder.

Defendants filed their motion for a new trial, which was overruled. They have appealed and present four issues. We discuss the first two issues together.

1. Did the learned trial court err in refusing to grant a new trial on the ground that the weight of the evidence did not support the amount of the verdict and the finding by the jury that there were no incidental damages?

2. Did the learned trial court err in refusing to grant a new trial on the ground that the verdict was so excessively low as to show passion, prejudice and caprice on the part of the jury?

Defendants state that they "are not complaining of the amount awarded to them for the easement areas actually taken as the award is clearly within the range of the testimony." It is their insistence "that the failure of the jury and subsequently the trial court to award any incidental damages constitutes an award so grossly inadequate that the conscience of this ... court should be shocked."

Defendants argue "that it is virtually impossible to take an easement which bisects a ... piece of real property and especially an industrial piece of property without doing considerable damage to the property remaining after the taking." In support of this contention, they cite *Great Lakes Pipeline Co. v. Carson*, 168 Kan. 100, 211 P.2d 70 (1949), wherein the Court stated: "We need not discuss the fact that the jury, as well as men in common, know that an easement dividing a tract of land adversely affects its value as a unit." *Id.*, 211 P.2d at 73. Defendants, it would seem, have invited this Court to adopt a rule that, as a matter of law, there is always damage to the remainder of property when an easement is granted and that the property owner is therefore entitled to some amount as incidental damages to the remainder. We decline this invitation. Whether there is damage to the remainder is a question to be decided by the trier of fact.

Defendants, by their argument, in essence contend that this Court should weigh the evidence and make a determination that they are entitled to a judgment for incidental damages. This we cannot do.

It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury. (Citations omitted.)

*Crabtree Masonry Co., Inc. v. C & R Construction, Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978).

There was evidence from plaintiff's experts from which the jury could find there was no damage to the remainder. George Thomas, a real estate appraiser for approximately twenty years, was qualified and testified as an expert on behalf of plaintiff. His testimony was that there was no incidental damage to the remainder of the property due to the installation of the pipeline. Kinnard P. Howell, a real estate appraiser for some nineteen years, was also qualified and he testified, as an expert witness on behalf of plaintiff, that there was no incidental damage to the remainder of the property. There was evidence from defendants and their expert witnesses from which the jury could have found that defendants were entitled to recover for incidental damages to the remainder of the property.

The jury saw the witnesses and heard the evidence and arrived at a valuation of the property. This valuation was approved by the Trial Judge. It was for the jury to pass upon the credibility of the witnesses and the weight to be given their testimony, after considering not only the opinions of the witnesses but also their qualifications to express opinions and the facts upon which those opinions were based. *State v. Chumbley*, 27 Tenn.App. 377, 385, 181 S.W.2d 382, 385 (1944).

There is material evidence to support the verdict of the jury. The verdict of the jury must, therefore, be affirmed. Issues one and two are without merit.

Defendants, by their third issue, contend:

[T]he learned trial court err[ed] in sustaining an objection of Colonial Pipeline Company to a hypothetical question submitted on cross-examination to Mr. George Thomas, an expert called on behalf of Colonial Pipeline Company, wherein George Thomas was asked to assume "that the Department of Public Works said that where this proposed road is shown is where they wanted to build the road."

On cross-examination by defendants' attorney of George Thomas, one of plaintiff's experts witnesses, the following colloquy was had:

Q. I want you to assume that the Department of Public Works said that where this proposed road is shown is where they wanted to build the road—

MR. McNAMEE: Your Honor, I want to object to assuming facts that are not in evidence at this point.

THE COURT: Sustained.

Defendants' attorney then went on to another line of questioning. He made no effort to show that there was any evidence in the record on which his hypothetical question was based. His silence at that point was complete. However, the next witness called was Mr. Kinnard Howell and, after direct examination of Mr. Howell was complete and before defendants' attorney began his cross-examination, he informed the Trial Judge as follows:

MR. GILLIS: Last night I had the Court Reporter prepare a transcript of testimony of Mr. Medlin. One was, "When was the Public Works anticipating doing this work, at least, building the road to Mr. Eatherly's property?" He expounded, "The Public Works has been requested to do the job, do a job that's not on his property right of way so that they could install a new water. The road we proposed to build had to have a grade change on it and raised up. They did not want their water line deep in the ground so they could maintain it. They asked us to bring this road up to grad[e], so they could maintain the water line, and we prepared to do it at that time.

"On March 26, 1976, was it anticipated that the road would be built there through Mr. Eatherly's property in the very near future?"

His answer was, "Yes, sir."

The Court then allowed defendants' counsel to ask Mr. Howell the following:

Q. I want you to make the following assumptions: I want you to assume, first, that the day of taking of this proposed road was staked in the manner shown on Exhibit 11. I want you to assume fur-

ther that the Metropolitan Planning Commission had granted the preliminary approval for the road to be built in this manner. I want you to assume as a third assumption that both the Planning Commission and the Department of Public Works desired that this road be built in this location.

Would those assumptions, then, have any affect on your evaluation of this property?

A. No, sir.

At the time the Trial Judge sustained plaintiff's objection to "assuming facts not in evidence," defendants' attorney had in his possession the portion of the transcript which had been prepared by the court reporter. When the objection was made, defendants' counsel made no effort to bring the transcript to the Court's attention. His silence was complete. Even if we concede that the Trial Judge was in error in disallowing the hypothetical question, defendants cannot be heard to complain. A party who fails to take whatever action is reasonably available to prevent or nullify the harmful effects of an error cannot be heard to complain. TRAP Rule 36(a); *see also, Norris v. Richards*, 193 Tenn. 450, 246 S.W.2d 81 (1952).

Further, after being allowed to ask Mr. Howell the foregoing hypothetical question, he never at any time attempted to recall Mr. Thomas and ask him the same question.

This issue is without merit.

■ Defendants lastly contend that the learned trial court err[ed] in not allowing Mr. Leon Bass to testify that the land remaining after the taking would be devalued because the cost of building spur tracking per usable acre would be increased.

Defendants' argument, in essence, is: If and when we build a road at the point we say we may build it, and thereafter we build a spur track, the spur track would service 13.56 percent less land.

While all damages occasioned by the condemnation of defendants' property should be considered, evidence of highly speculative damages such as we have here should not be permitted. *See State v. Parkes*, 557 S.W.2d 504 (Tenn.App. 1977). We find no error in the Trial Judge's exercise of discretion in disallowing Mr. Bass's testimony as to the spur track.

The judgment of the Trial Court is affirmed with costs to defendants. The cause is remanded to the Trial Court for the collection of costs and any other necessary proceedings.

TODD, P. J. (M.S.), concurs in separate opinion.

CANTRELL, J., concurs.

TODD, Presiding Judge, concurring.

All that my respected colleague has written is the law and unavoidable result of the record which was made in the Trial Court.

However, two points deserve emphasis in connection with the issues on appeal.

The first point is that an easement is not a fee simple title—it is merely an encumbrance upon the fee simple title which remains in the owner of the subservient title. For this reason, the very heart and substance of compensation for an easement is the detriment of the easement to the usefulness, ergo, value of the subservient estate. There can be no valid complaint that the jury granted no incidental damages because incidental damages are the essence of compensation for an easement.

The other point is that the jury was frustrated by the extremes of testimony on either side. Plaintiff's "experts" testified that the remaining property was undamaged by the easement. It is elemental knowledge deducible by any rational, well informed individual the value of property is diminished by an easement which interferes with the use of the property without being of some special and compensating benefit. Perhaps plaintiff's experts intended to testify that the damage to the property did not exceed the valuation stated for the easement itself. Such would have been a valid and acceptable opinion, but it was not so expressed.

The expansive estimates of damage by defendants' witnesses were obviously unac-

ceptable to the jury who were left with no evidence upon which to base a modest amount of incidental damages in addition to the value of the easement; hence the jury simply and understandably awarded no incidental damages as such.

While I am satisfied that the easement did result in incidental damage to the residue, I am likewise satisfied that the verdict cannot be set aside for failure to award incidental damages because incidental damages were the essence of the award that was made.

It is hoped that the foregoing will contribute somewhat to the technique of trial of eminent domain suits for easement.